**STATE ex rel. WILLIAM RANNI ASSOCIATES, INC., Relator,**

v.

**Honorable James R. HARTENBACH, Judge, Circuit Court of St. Louis County, Respondent.**

**No. 69380.**

Supreme Court of Missouri, En Banc.

Dec. 15, 1987.

Adrian P. Sulser, Edward S. Meyer, St. Louis, for relator.

Alan J. Agathen, Clayton, for respondent.

HIGGINS, Judge.

William Ranni Associates, Inc., a New York corporation claiming that Missouri courts cannot exercise personal jurisdiction over it, seeks a writ of prohibition to prevent Judge Hartenbach from proceeding to trial on underlying claims against Ranni.[1] This Court issued a preliminary writ of prohibition which is now made absolute.

This proceeding arises from the resolution of a claim on a life insurance policy issued to Morris Victor, a Missouri resident who died September 23, 1981. Plaintiffs, beneficiaries under the policy, are the three children and former wife of Morris Victor. He was insured under a group life policy purchased and maintained by Thrifty Drug,

---

1. Victor, et al., plaintiffs, v. Joseph Victor and The Manhattan Insurance Company and William Ranni Associates, Inc., defendants.

an Illinois corporation, where he was an employee and officer. The policy was issued by Manhattan Life Insurance Company with a face amount of $95,000. Ranni is the general agent of Manhattan Life with duties of transmitting the application from Thrifty Drug to Manhattan Life and the policy proceeds from Manhattan Life to the beneficiaries. It did not participate in the sale of the policy. Joseph Victor, a nephew of Morris Victor, was appointed executor of the estate by the will of Morris Victor. Believing himself to be the beneficiary under the policy, Joseph Victor submitted a claim for the policy proceeds. Manhattan Life determined on or about March 11, 1982, that Joseph Victor was not a policy beneficiary and so informed Ranni.

Plaintiffs subsequently filed suit contesting the will which designated Joseph Victor executor and principal beneficiary. In an effort to induce settlement of this lawsuit, Joseph Victor disclosed the existence of the Manhattan Life policy and plaintiffs' status as beneficiaries thereunder. Plaintiffs promptly submitted their claim to the policy proceeds August 31, 1983, and Manhattan Life paid the claim September 10, 1983.

Plaintiffs sued Ranni in Missouri for alleged breach of fiduciary and contractual obligations, as well as for negligent handling of the insurance policy and claim, seeking recovery for loss of use of the $95,000 benefit for the 14-month period during which payment was delayed, together with exemplary damages and attorney fees. Service on Ranni was made in New York under the provisions of the long arm statute, sections 506.500–510, RSMo 1986.

Ranni moved to quash service and dismiss the petition for lack of personal jurisdiction. Judge Hartenbach ordered the motion held in abeyance for 30 days so that plaintiffs could file jurisdictional interrogatories. Ranni claims the interrogatory answers demonstrate an absence of jurisdictional grounds. Plaintiffs claim that Ranni's interrogatory answers misrepresented its contacts with the State of Missouri. Because of this alleged misrepresentation, plaintiffs claim this Court should remand for further discovery. Even without further discovery, plaintiffs claim that sufficient contacts with Missouri have been established to satisfy the due process clause of the federal constitution and the Missouri long arm statute.

## I.

Plaintiffs contend this Court should remand to the trial court to permit them to obtain additional record to support the trial court's ruling. They claim the record is incomplete because Ranni has manipulated the discovery process. Plaintiffs' interrogatories asked Ranni if it had any role in "processing the claim" of either Joseph Victor or plaintiffs on the life insurance policy in question. Ranni answered, "None." Plaintiffs assert this response is contradicted by the interrogatory responses of Manhattan Life which indicates that as "Manhattan Life's general agent, Ranni had primary responsibility for communications with Ranni's clients, in this case, Thrifty Drug." Manhattan's answers also revealed that Ranni participated in the relaying of information between its client, Thrifty Drug Company, and Manhattan Life, concerning the proceeds of the policy insuring Morris Victor's life. According to Manhattan, "Ranni's duties included receiving completed life insurance applications and forwarding them and other needed material to the home office. On the claims side, the duties included notifying the home office of the death of an insured, supplying the beneficiary or broker with claims forms, forwarding completed forms to the home office and forwarding claims checks to the broker or the beneficiary." Manhattan further states that "Ranni forwarded the death certificates and claim forms completed by Joseph Victor and Thrifty Drug Company to the home office." In addition, Manhattan states that "Ranni forwarded the check in payment of the benefits of the policy to the payee on or about September 13, 1983."

Plaintiffs claim that the term "processing the claim" includes the entire sequential procedure for handling a claim from beginning to end. Ranni argues that the term "processing the claim" involves only

the decision-making process of whether to pay the claim. Thus Ranni alleges it had no part in the processing of the claim, as indicated in its interrogatory answers.

Plaintiffs claim that Ranni, by incorrectly denying that it played a role in the processing of claims, was able to avoid answering follow-up interrogatories numbered 9 and 10. They believe answers to these interrogatories may have helped establish the nature, scope and extent of Ranni's contacts with the state of Missouri. These interrogatories asked Ranni if it had assisted in processing any other claim of Manhattan Life on policies issued to Missouri residents and requested identification of all such policies. By the time plaintiffs received Ranni's interrogatory responses the 30–day discovery period had lapsed and plaintiffs were foreclosed from further discovery. When Ranni's motion to dismiss came before the trial court, after close of the discovery period, plaintiffs had no reason to challenge Ranni's interrogatory answer 8 and seek an augmentation of the record regarding Ranni's contact with this state because the motion was denied.

Since this Court granted the preliminary writ of prohibition, plaintiffs ask remand to the trial court for further discovery. They cite *Se-Ma-No Electric Cooperative v. City of Mansfield*, 321 S.W.2d 723, 730 (Mo.App. 1959); *State ex rel. McElvain v. Riley*, 276 S.W. 881, 883 (Mo.App.1925); 63A Am. Jur.2d, Prohibition, section 88 (1984), for the proposition that this Court has authority on a petition for a writ of prohibition to remand to the trial court with instructions for further action.

■ None of the authorities cited involved prohibition where the court remanded for further discovery. In the absence of extraordinary circumstances, this Court will either make the writ absolute or quash the preliminary writ, depending on whether plaintiffs have met the burden of establishing sufficient contacts with Missouri to satisfy due process. This dispute regarding the meaning of a discovery term could not be characterized as an extraordinary circumstance. Accordingly, this Court denies plaintiffs' request for remand and will limit the inquiry to whether plaintiffs have met their burden of establishing jurisdictional contacts.

## II.

Ranni contends that Judge Hartenbach exceeded his jurisdiction in denying Ranni's motion to quash and dismiss for lack of personal jurisdiction. Ranni alleges it did not have sufficient minimum contacts with the state of Missouri to make it amenable to process in this state in compliance with the due process clauses of the federal and Missouri constitutions.

■ Prohibition is the proper remedy to prevent further action of the trial court where personal jurisdiction of the defendant is lacking. *State ex rel. Boll v. Weinstein*, 365 Mo. 1179, 295 S.W.2d 62 (1956).

■ When a defendant raises the issue of lack of personal jurisdiction, the plaintiff has the burden of pleading and proving the existence of sufficient minimum contact with a forum state to justify the exercise of jurisdiction. *State ex rel. Honda Research & Development Co., Ltd. v. Adolf*, 718 S.W.2d 550, 552 (Mo.App.1986). Plaintiff must prove the suit arose out of an activity covered by the long arm statute, section 506.500, RSMo 1986, and that defendant had sufficient minimum contacts with Missouri to satisfy due process requirements. *Medicine Shoppe Intern., Inc. v. J–Pral Corp.*, 662 S.W.2d 263 (Mo.App.1983). "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *State ex rel. Deere and Company v. Pinnell*, 454 S.W.2d 889, 893 (Mo. banc 1970). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum and the litigation. *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed. 804 (1984).

Ranni contends that it is not subject to jurisdiction in Missouri courts because it conducted no purposeful activity within the state, citing *State ex rel. Bank of Gering v. Schoenlaub,* 540 S.W.2d 31 (Mo. banc 1976). In *Gering,* plaintiff sought to recover damages from a nonresident bank for its allegedly negligent failure to notify plaintiff within a reasonable time that certain bank drafts would not be honored. This "negligence" allegedly caused the plaintiff to sustain damage in Missouri. This Court held that personal jurisdiction could not constitutionally be exercised against the defendant because it had not purposefully availed itself of the privilege of conducting activities in this state. *Gering,* 540 S.W.2d at 35.

Plaintiffs claim *Gering* is distinguishable because the Bank of Gering had not solicited the business of the Missouri resident. The Missouri resident, the plaintiff, had deposited a draft in his Missouri bank, drawn on defendant's account at the Bank of Gering. The Court said it was unforeseeable to the Nebraska bank that such a draft would originate in Missouri and therefore that a Missouri resident would suffer adverse consequences from a mishandling of the draft.

Plaintiffs contend that in this case, the record supports an inference that the policy was sold in an interstate marketing scheme. They allege that Ranni, as part of that scheme, knew in advance that the activities rendered in execution of its obligations might well have interstate consequences. Thus, respondent argues Ranni is subject to the jurisdiction of Missouri courts because it had reason to know that these consequences might affect Missouri residents.

■ This argument is not persuasive. Because someone in Missouri conceivably could suffer a financial loss as a result of Ranni's out-of-state activities does not make Ranni amenable to the courts of this state. This Court rejected a similar argument in *Gering.* In order to satisfy due process, a defendant must also purposefully avail itself of the benefits and protections of the forum's laws. Those cases involving a defendant who shipped a product into Missouri which ultimately caused a physical harm in this state are inapposite. *See, e.g., Deere,* 454 S.W.2d 889. The minimal contacts required in the products' liability area involving stream of commerce are less stringent than in other areas. *State ex rel. Wichita Falls General Hospital v. Adolf,* 728 S.W.2d 604, 608 (Mo.App. 1987).

The jurisdictional contacts in *Wichita Falls* are similar to those in this case. The court there considered a wrongful death action against the hospital which had supplied a donated heart for transplantation purposes. The hospital was incorporated in Texas, with its principal place of business in that state. It had no agents and did not conduct any business in Missouri. The court concluded that due process would not support the exercise of long arm jurisdiction over the hospital because the defendant did not purposefully avail itself of the benefits and protections of the forum's laws. The court explained that the "purposeful availment" requirement:

> ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . or of the "unilateral activity of another party or third person,". . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.

*State ex rel. Wichita Falls,* 728 S.W.2d at 607–608, *quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

In *Wichita Falls*, the record demonstrated that the contacts were fortuitous because the defendant had no history of contacts with Missouri, did not utilize the benefits of the laws of Missouri, and did not purposefully select a Missouri resident as the recipient of the organ to be transplanted. The record further established that although the supplying of the organ had an effect in Missouri, the contact with Missouri resulted from the unilateral activity of the co-defendants.

In this case Ranni's only involvement was as a conduit of information between Manhattan Life and Thrifty Drugs. Plaintiffs have shown no history of contacts with the state of Missouri; they have not shown that Ranni maintained any agents, transacted any business, or committed any tortious act within the state. That Missouri residents were named as beneficiaries was random, fortuitous and the result of unilateral activity of the insured. Any contact with Missouri was initiated by the other parties, Manhattan Life and Thrifty Drugs. Any failure to act on the part of Ranni occurred in New York, not in Missouri. In short, Ranni has not purposefully availed itself of the laws and protections of Missouri and therefore contacts with Missouri are not sufficient to meet constitutional due process.

Because Ranni did not purposefully avail itself of the privilege of conducting business in Missouri, it is unnecessary to discuss plaintiffs' contention that Ranni conducted business within this state which would constitute a jurisdictional act under the long arm statute, section 506.500, RSMo 1986.

### III.

Plaintiffs argue that Missouri courts can properly assert jurisdiction over Ranni because it committed a tortious act within the state, citing *State ex rel. Caine v. Richardson*, 600 S.W.2d 82 (Mo.App. 1980). A single tortious act is sufficient to support personal jurisdiction consistent with due process standards. *Caine*, 600 S.W.2d at 84. Commission of a tortious act within this state includes extraterritorial acts of negligence producing actionable consequences in Missouri. *Caine*, 600 S.W. 2d at 85. A party relying on a defendant's commission of a tort within this state to invoke long arm jurisdiction must make a prima facie showing of the validity of his claim. *Deere*, 454 S.W.2d at 892.

Ranni contends that plaintiffs failed to make such a showing because Ranni's obligation to carry out Manhattan Life's instructions to notify beneficiaries inured only to the benefit of Manhattan Life. Ranni further argues that plaintiffs are mere incidental or donee beneficiaries of the contract between Ranni and Manhattan Life and therefore lack standing to sue it for the alleged breach of contractual duties.

On the question whether Ranni committed a tort in allegedly failing to notify plaintiffs of the existence of the policy in a timely manner, Ranni cites 44 C.J.S. Insurance, section 165, (1945), which cites *Greyhound Corporation v. Commercial Casualty Insurance Co.*, 259 A.D. 317, 19 N.Y.S.2d 239 (N.Y.Sup.Ct.1940), for the proposition that an agent, acting within the scope of his authority, is not liable in tort to third persons for economic harm caused by his actions. *Greyhound* held that an agent who allegedly induced the insurance carrier (the principal) to breach an insurance contract between his employer and a third person, does not become liable in tort for the breach. Procuring the breach of a contract is a wrong committed against the principal, not the insured. The agent is liable only if he commits acts which would constitute an independent tort.

Plaintiffs counter by citing three Missouri decisions, *Lee v. Allen*, 120 S.W.2d 172 (Mo.App.1938); *Guthrie v. Albert Wenzlick Real Estate Co.*, 54 S.W.2d 801 (Mo.App.1932); *Case v. Missouri Public Service Corp.*, 78 F.Supp. 776 (W.D.Mo. 1948), for the proposition that an agent's misfeasance in the execution of his duties can render him liable to a third party injured thereby. These cases can be distinguished because they involve an agent who committed separate tortious acts. None of

the cases cited involve a situation where the agent's only wrong is an alleged breach of duties owed to his principal. Because this case does not involve an agent's independent tortious conduct, Ranni is not liable for the alleged failure to notify plaintiffs. *See, e.g., American Insurance Co. v. Material Transit, Inc.,* 446 A.2d 1101, 1104 (Del.Super.1982). *American Insurance* held that an agent owed no duty of care to insured for economic harm resulting from the agent's failure to inform the insured of increased premium rates. The premise of this holding is that the agent is the agent for the insurance carrier, not the insured. Thus, the agent's only duty to avoid the economic loss was owed to the principal. The court relied on Restatement of Agency, section 357 (1958), for the proposition that an agent is not liable for economic loss to third persons when he negligently fails to perform duties owed only to his principal.

On the question of whether Ranni committed a tort in causing a breach of the life insurance contract, Restatement (Second) Agency, section 320, 328 (1958), and 16 Appelman Insurance Law and Practice, section 8832 at 30 (1981), establish that an agent for a disclosed principal is not a party to a contract and is not liable for its nonperformance. *See also Grether v. DiFranco,* 178 S.W.2d 469, 473 (Mo.App. 1944). Thus the only parties to this allegedly breached contract for life insurance are Manhattan Life and Thrifty Drug. Ranni is not personally liable to the plaintiffs for economic loss caused by acts performed within the scope of its authority. Had plaintiffs been able to establish that they were third party beneficiaries, Ranni would not be liable because it was not a party to the contract. If plaintiffs suffered economic loss from the acts of Ranni as an agent, their remedy is to sue the principal, Manhattan Life, who is subject to the jurisdiction of Missouri courts. *Greyhound* and *American Insurance* also support this position in that the agent is not liable for economic loss resulting from acts performed within the scope of its agency.

Plaintiffs' assertion that Ranni's alleged breach of the agency contract between Ranni and Manhattan Life would constitute a tort is also rejected. They theorize that as beneficiaries under the policy they were owed some duty which, when breached, constituted a tort. This theory is rejected because the mere failure to perform a contract cannot serve as the basis of tort liability for negligence. *See, e.g., Davidson v. Hess,* 673 S.W.2d 111 (Mo.App. 1984); *State ex rel. Cummins Missouri Diesel Sales Corp., v. Eversole,* 332 S.W.2d 53 (Mo.App.1960).

To determine the character of an action, whether tort or contract, it is necessary to ascertain the source of the duty claimed to be violated. *Davidson,* 673 S.W. 2d at 112. Here the source of the duty is in contract. The failure to perform a contracted obligation in a timely manner would not be an independent tort in the absence of a contract. This case is not similar to *Davidson,* where the tenant was wrongfully evicted and the landlord's retention of the tenant's possessions amounts to an act of tortious conversion independent of the contract. Because the duty breached in this case stems from the contract, the breach does not amount to a tort.

Plaintiffs claim that they are owed some duty because they are third party beneficiaries is also rejected. Their theory is mistaken because it fails to recognize that two separate contracts are involved in this case. Plaintiffs obviously are the third party beneficiaries of the life insurance contract between Manhattan Life and Thrifty Drug. But plaintiffs are mere "incidental beneficiaries" of the agency contract between Ranni and Manhattan Life. Incidental beneficiaries are parties benefitting only collaterally from the contract and are not entitled to recover. *Volume Services, Inc. v. C.F. Murphy & Assoc.,* 656 S.W.2d 785, 795 (Mo.App.1983); *Teter v. Morris,* 650 S.W.2d 277 (Mo.App. 1982). In order to be designated a "third party beneficiary" who would be owed contractual duties, the contract terms must "clearly express" an intent to either benefit that party or an identifiable class of which

the party is a member. *Volume Services,* 656 S.W.2d at 795. Absent such express declarations, a strong presumption arises that parties contract for themselves and not for the benefit of others. *Id.*

The agency contract between Ranni and Manhattan Life appears as one for the convenience of those parties only. The contract may show an intent to benefit the client, Thrifty Drug, but plaintiffs have not shown that it clearly expresses an intent to benefit the plaintiffs as beneficiaries under the contract for life insurance. There was no showing that the parties to the contract, Ranni and Manhattan Life, intended plaintiffs to be able to enforce the contract. Thus, plaintiffs have not established that they were third party beneficiaries of the agency contract.

Because Ranni owed no duty to plaintiffs, plaintiffs fail to make a prima facie tort case. Thus jurisdiction cannot be founded on the commission of a tortious act.

Because plaintiffs have not met their burden of establishing a basis for the exercise of personal jurisdiction over Ranni, the preliminary writ is made absolute.

All concur.