Iris Mae Dysart (GULLEY), Appellant,

v.

Claude J. WERTH, M.D., Respondent.

No. 24027.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 18, 2001.

Motion for Rehearing or Transfer Denied
Nov. 13, 2001.

Application for Transfer Denied
Dec. 18, 2001.

Donald T. Taylor, Kansas City, for Appellant.

William A. Lynch, Steven Martin Aaron, Shirley Ward Keeler, Kansas City, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Iris Mae Dysart (Gulley), ("Appellant") appeals the judgment of the Circuit Court of Camden County granting a motion for directed verdict filed by Claude J. Werth, M.D., ("Respondent") following evidence presented in Appellant's lawsuit against Respondent for false imprisonment and medical malpractice.[1] Appellant raises three points of error, discussed below.

Appellant was previously married to Earnest Gulley for about 43 years. In 1990 Appellant began counseling with Dr. Kenneth Wilcox ("Dr.Wilcox"), a psychologist, after experiencing marital problems. In the course of her treatment, Dr. Wilcox advised Appellant that she would benefit from treatment with a psychiatrist. Appellant began treatment with Respondent, a licensed psychiatrist, in July of 1993. She informed Respondent that she believed the source of her problems was that she was not happy with her husband. In the course of Appellant's treatment, Respondent prescribed several medications to help combat her depression. Appellant saw Respondent on a recurring basis from July of 1993 until her last session with him on October 31, 1994. Prior to that time, on July 29, 1994, Appellant complained to Respondent that she had suspected her husband of having an affair and did not

---

1. Prior to trial she dismissed her counts as to other defendants.

want her husband to be included in any of her sessions with Respondent.

On the evening of November 21, 1994, Appellant and Mr. Gulley had a heated argument concerning the couple's finances. Eventually, the Camden County Sheriff's Office responded to the residence and Mr. Gulley left the residence to stay elsewhere. The next morning, Appellant went to the Camden County Courthouse to seek an ex parte order of protection from Mr. Gulley. She filled out the paperwork and was advised to return that afternoon.

In the meantime, Mr. Gulley called Respondent to explain his version of what had happened the previous night. Respondent testified that Mr. Gulley had told him that there had been a "big brew-ha-ha ... [p]olice cars had arrived. It sounded like things were out of hand." This was not the first conversation the two had regarding Appellant, as Mr. Gulley had contacted Respondent three other times in the days preceding November 22, 1994. There is no record of what was said during these conversations, additionally, either the Sheriff or a Sheriff's deputy had conversations with Respondent relating to Appellant, a fact acknowledged in Appellant's brief.

When Mr. Gulley spoke to Respondent on the morning of November 22, 1994, he informed Respondent that he did not know where Appellant was and that a .38 caliber pistol was missing from the residence. At that point, Respondent advised Mr. Gulley to come to Respondent's office and pick up a letter which Respondent had addressed to the probate court. It read as follows:

> It is [Respondent's] opinion, that of her husband, and the Camden County Sheriff's Department that [Appellant] is suffering from Major Depressive Disorder complicated by paranoid delusional thinking. There is no question in my mind that she is potentially injurious to herself and more importantly to her husband.
>
> I am requesting that she be committed to a psychiatric facility for no less than 30 days.
>
> Should you have any questions, please feel free to contact me at any time.

Respondent had signed the letter and had it notarized. Respondent did not make any attempt to contact Appellant that morning and had not spoken with her since her last visit on October 31, 1994.

After receiving this letter from Respondent, Mr. Gulley returned to the probate court and filled out an Application for Detention, Evaluation and Treatment ("application"). *See* § 632.305, set out in pertinent part, *infra.*[2] In the application presented to the probate court, Mr. Gulley set out that Appellant had threatened to kill him and threatened to kill herself, and listed the names of two lay witnesses as persons knowing the parties. The docket entry reflects that the "clerk confirmed [a] letter from [Respondent]." The probate court issued its Order for Detention, Evaluation and Treatment, directing Appellant to be placed in the custody of the Director of the Department of Mental Health for a 96–hour observation period. *See* § 632.305.2. Appellant, who had returned to the courthouse, was taken into custody by the Camden County Sheriff's Office and transported to the Mid Missouri Health Center ("health center") in Columbia, Missouri.

The morning after arriving at the health center, Appellant was seen by Steven Soltys, M.D. ("Dr.Soltys"), the medical director of the health center at that time. Upon speaking with Appellant, Dr. Soltys did not find her to be "psychotic at that

---

**2.** Statutory references are to RSMo 2000.

time" but wanted to keep Appellant so that the health center could observe Appellant and verify the events as she had related them. The following day was Thanksgiving and the next three days included a holiday and the weekend, therefore Appellant was not seen again by Dr. Soltys until the following Monday. By noon of that day, Dr. Soltys concluded that Appellant was well enough to be released and opined that Appellant was inappropriately committed.

In her first point, Appellant asserts that the trial court erred in granting Respondent's motion for directed verdict in that sufficient evidence was presented to establish a submissible case on the claim of false imprisonment. In point two, Appellant sets out that the trial court "erred in ruling that the physician/patient privilege of [RSMo] 632.425 ... was waived, and did not allow [Respondent] to present her case concerning [Respondent's] breach of this confidentiality ... [per RSMo 491.060] and no statutory exception occurred...." In her third point, Appellant asseverates that the trial court erred in granting Respondent's motion for directed verdict because Appellant presented sufficient evidence to establish a submissible case of medical malpractice against Respondent.

■ In reviewing the trial court's granting of a motion for directed verdict, this Court reviews the evidence to determine whether a submissible case was made by Appellant. *McNear v. Rhoades*, 992 S.W.2d 877, 884 (Mo.App.1999). "In determining whether a submissible case is made, we view the evidence and all reasonable inferences therefrom in the light most favorable to the claimant's case and disregard all evidence to the contrary." *Id.* Each element that is required to establish liability on the part of Respondent must be supported by substantial evidence, which is "competent evidence from which a trier of

fact can reasonably decide the case." *Id.* A directed verdict is proper if there is not substantial evidence to support one of the elements of a cause of action. *Id.* "However, a directed verdict is a drastic action and should only be granted if reasonable persons could not differ as to the outcome of the case." *Id.*

Appellant alleges in her first point that the trial court erred in sustaining Respondent's motion for directed verdict because Appellant presented sufficient evidence to establish a submissible case of false imprisonment. Appellant contends that Respondent's letter requesting that Appellant "be committed to a psychiatric facility for no less than 30 days" was improper and provided the basis for her unlawful detention.

■ False imprisonment occurs when one individual confines another without legal justification. *Bramon v. U–Haul, Inc.*, 945 S.W.2d 676, 680 (Mo.App.1997); *Desai v. SSM Health Care*, 865 S.W.2d 833, 836 (Mo.App.1993). The elements of false imprisonment are the detention of an individual against their will coupled with the unlawfulness of the detention. *Bramon*, 945 S.W.2d at 680. Liability attaches where the evidence shows that the defendant to a suit instigated, caused, or procured the illegal detention. *Desai*, 865 S.W.2d at 836.

■ In her brief, Appellant maintains that the actions of Respondent in speaking with Mr. Gulley about her condition and writing the letter "instigated and/or encouraged [Appellant's] arrest and confinement...." She, therefore, argues that she "established a submissible case that [Respondent] caused her to be falsely imprisoned." We do not agree.

We initially take note that it was Mr. Gulley who filed the application seeking Appellant's commitment for mental evalua-

tion.[3]  In support of his application it was Mr. Gulley, not Respondent, who recited that Appellant had threatened to kill him and threatened to kill herself.  It was Mr. Gulley who had initiated the discussion of his spouse's purported problems with Respondent, which, in turn led to Respondent's letter.  It was the probate court that entered the commitment order.  The procedures provided by section 632.305 were expressly followed.  In this respect the commitment order was completely legal.  Furthermore, Appellant has failed to establish, to our satisfaction, that Respondent's actions *instigated, caused, or procured* her detention.  Under similar circumstances in *Ussery v. Haynes*, 344 Mo. 530, 127 S.W.2d 410 (1939), it was held that liability did not attach to a doctor that testified or provided information concerning an individual, but who did not take part in the actual commitment, unless a claim is made that the doctor provided false or biased information regarding that individual.  *Id.* at 417.  Here, Appellant has not demonstrated that Respondent provided false or biased information or otherwise was not acting in good faith when he wrote the letter.  We cannot say that the trial court erred in entering a directed verdict on Appellant's count of false imprisonment against Respondent.  Point denied.

■  In her second point, Appellant alleges the trial court erred in ruling that the physician/patient privilege between Appellant and Respondent was waived pursuant to section 632.425.[4]  As a result, Appellant argues that she was not allowed to present her case regarding Respondent's breach of [his fiduciary duty of] confidentiality.  However, Appellant did not bring an action against Respondent specifically for this breach, which cause of action is recognized in *Brandt v. Med. Defense Assocs.*, 856 S.W.2d 667, 670–71 (Mo. banc 1993); *see also* § 632.425.  Instead, she pursued theories of false imprisonment and medical malpractice.[5]

We observe that in Count I (false imprisonment) Appellant alleged that Re-

3.  Section 632.305.1 provides that:

> An application for detention for evaluation and treatment may be executed by any adult person, who need not be an attorney or represented by an attorney, including the mental health coordinator [defined as a 'mental health professional' employed by the state of Missouri, per § 632.005(11) ], on a form provided by the court for such purpose, and must allege under oath that the applicant has reason to believe that the respondent is suffering from a mental disorder and presents a likelihood of serious harm to himself or to others.  The application must specify the factual information on which such belief is based and should contain the names and addresses of all persons known to the applicant who have knowledge of such facts through personal observation.

Section 632.305.2 also provides, in pertinent part, that:

> The filing of a written application in court by any adult person ... shall authorize the applicant to bring the matter before the court on an ex parte basis to determine whether the respondent should be taken into custody and transported to a mental health facility.

4.  Section 632.425 reads:

> The physician-patient privilege recognized by section 491.060, RSMo, and the psychologist-patient privilege recognized by section 337.055, RSMo, shall be deemed waived in detention proceedings under this chapter.  The fact that such privileges have been waived pursuant to this section does not by itself waive the privileges in any other proceeding, civil or criminal.  The waiver of the privileges shall extend only to that evidence which is directly material and relevant to detention proceedings.

5.  "The trial court's authority is limited to such questions as are presented by the parties in their pleadings." *Cottonhill Inv. Co. v. Boatmen's Nat. Bank*, 887 S.W.2d 742, 743 (Mo.App.1994).

spondent gave Mr. Gulley a letter indicating that Appellant "was a threat to herself and/or others." In Count III (medical malpractice), among her allegations, Appellant alleged that Respondent breached his duty of care in "violating his patient's [Appellant's] confidentiality and trust." In our review of the pleadings and the transcript in this case, we find that Appellant was afforded ample opportunity to elicit evidence and testimony supporting the allegations set out in the foregoing pleadings and touching on Respondent's purported "breach of confidentiality," vis-à-vis her claims for false imprisonment and medical malpractice. The trial court's comments at the conclusion of Appellant's case and its judgment make it clear that the trial court directed a verdict in favor of Respondent and against Appellant solely on the basis that Appellant "[did] not establish a submissible case on the claim for false imprisonment and on the claim for medical negligence."

Appellant cites *Fierstein v. DePaul Health Ctr.*, 949 S.W.2d 90 (Mo.App.1997) as support for her argument. We find it is of little assistance to Appellant. In *Fierstein*, the plaintiff sued a hospital after the hospital prematurely released her medical records to her ex-husband's attorney after receiving a subpoena to provide the records at a deposition. The trial court granted the hospital's motion for summary judgment and the plaintiff appealed. *Id.* at 91. The Court of Appeals reversed the trial court's ruling, noting that there is a "fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of the patient." *Id.* at 92. "If a physician discloses any information, without first obtaining the patient's waiver, then the patient may maintain an action for damages in tort against the physician." *Id. Fierstein* simply recognizes that a tort action

may lie against a physician for violation of his fiduciary duty of confidentiality. *Id.*

Appellant has not shown that the trial court ruling materially affected the merits of her action. Rule 84.13, Missouri Court Rules (2001). Point denied.

■ In her third point, Appellant posits trial court error in sustaining Respondent's motion for directed verdict on Appellant's claim of medical malpractice against Respondent. Appellant argues that sufficient evidence was presented at trial to establish a submissible case of medical malpractice against Respondent.

■ "The elements of a claim for medical malpractice are: (1) an act or omission by the defendant that failed to meet the requisite medical standard of care; (2) the act or omission was performed negligently, and (3) a causal connection between the act or omission and the plaintiff's injury." *Lashmet v. McQueary*, 954 S.W.2d 546, 551 (Mo.App.1997).

In this point, Appellant sets out her theory of liability. She asseverates that Respondent "violated the requisite standard of care of an ordinarily skillful, careful and prudent health care provider," by (1) "speaking with an estranged spouse without [Appellant's] permission;" (2) "speaking with a sheriff without any waiver from [Appellant] about [Appellant's] condition . . .;" and (3) "preparing a letter recommending [Appellant] for commitment without a face-to-face examination, or even speaking with [Appellant]." She alleges that "but for" the conduct of Respondent, Appellant would not have been committed to the health center. *See Long v. Missouri Delta Med. Ctr.*, 33 S.W.3d 629, 637 (Mo.App.2000).

■ It is our view, after applying Appellants' pleadings and facts elicited at trial to the elements of a claim for medical malpractice, that Appellant has failed to

show a causal connection between Respondent's purported acts or omission and Appellant's "injuries." It is clear that whatever injuries Appellant may have suffered consisted of those personal injuries flowing from her purported false imprisonment, and not personal injuries in the sense of a "hurt or damage to her person, such as a cut or bruise or broken limb. . . ." *St. John's Reg. Health Ctr., Inc. v. Windler,* 847 S.W.2d 168, 171 (Mo.App.1993). A "duty and breach of duty (negligence elements) are not elements in a false imprisonment case." *Id.* n. 6.

■■■ More importantly, proof of causation in a medical malpractice case, except in cases where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it, requires expert testimony. *Tillman v. Elrod,* 897 S.W.2d 116, 118 (Mo.App.1995). Here Appellant failed to present sufficient expert testimony supporting a conclusion that any of these alleged procedural deficiencies, i.e., violation of medical standards, caused Respondent to offer *an erroneous opinion* that directly caused Appellant to be committed for an emergency evaluation per section 632.305.3.[6]

There is little basis for an inference that Respondent's opinion would have been different had he seen Appellant face to face before writing his letter. He had been made aware by both the Sheriff or his deputies and Mr. Gulley that there had been an altercation the night previously. He had seen Appellant less than a month earlier and had been treating Appellant for over a year prior thereto. He was fully aware of her emotional and mental status and was aware of her hostility toward her husband. Respondents' office records reflect that Appellant's hostility toward her husband was increasing. Appellant's own expert witness, Dr. James R. Whitten, M.D., acknowledged that if he had recently seen a patient he would have "an insight to the patient." In response to the question, "Doctor, if you had a number of opportunities to work or deal with a patient in the past and that patient calls you, can you get a pretty good idea with that patient what's going on based on your training and experience of talking with people?", he responded, "Well, if I've seen them recently I think I could extrapolate."

Appellant again cites *Fierstein* as support, discussed *supra,* but it has little relevancy to her argument. In her pleadings it is clear that Appellant has not sought damages on the basis of a violation of a fiduciary duty of confidentiality, per se. In order for her to prevail on her claim for medical malpractice, Appellant must have presented expert evidence showing that Respondent offered an erroneous opinion that proximately caused her commitment. It is our view that Appellant did not do so. Point denied.

The judgment is affirmed.

SHRUM, P.J., concurs.

MONTGOMERY, J., concurs.

---

**6.** In its Order for Detention, Evaluation and Treatment, the trial court did not express the reasons for its order. In our review of section 632.305, we discern that there is no statutory requirement for the probate court to first receive medical or psychiatric expert testimony as a prerequisite to ordering a patient to be detained for evaluation and treatment.