James D. GRAY, Respondent,

v.

BUILDERS SQUARE, INC., Appellant.

No. WD 52611.

Missouri Court of Appeals, Western District.

April 22, 1997.

Chukwuemek N. Chionuma, Kansas City, for appellant.

Ronald Muller, Kansas City, for respondent.

HANNA, Presiding Judge.

The defendant, Builders Square, appeals from a jury verdict finding it negligent in the installation of a privacy fence for the plaintiff, James D. Gray. The jury found that the defendant's negligence had reduced the value of the plaintiff's house in the amount of $24,000. The jury assessed plaintiff's comparative fault at twenty-five percent, and the court entered judgment in plaintiff's favor for $18,000. On appeal, the defendant challenges the sufficiency of the evidence to sustain the verdict and the trial court's instruction to the jury on agency.

In July 1991, the plaintiff purchased a privacy fence from Builders Square which subsequently was installed by an independent contractor who had contracted with Installed Sales, a division of Builders Square. On December 12, 1993, the plaintiff's hot water heater went out, and the person who replaced it found that the crawl space under the plaintiff's house had standing water. It was discovered that the sewer line in the plaintiff's yard was filled to the top. The plaintiff called Mr. Wilson of Agape Plumbing, who tried to snake out the sewer line but found that it was blocked by a fence post which was part of the privacy fence installed in 1991. The next day Builders Square removed the post and cement, and Wilson repaired the damaged pipe. At the time of repair, Wilson saw a small hole in the crawl space under the plaintiff's house that was partially full of water. A few days later he pumped out the crawl space. Most of what he removed was water. Normally, if the sewage is excessive, Wilson applies dehydrated lime to kill the bacteria. In this case, there was not much sewage, so he used Pine–Sol to disinfect the area. Wilson testified that once the sewer line is repaired and the cleanup is done, in cases like this, the problem is resolved.

The plaintiff smelled odors and found what appeared to be mold or fungus spots on the

walls of his house between 1991 and 1993. He also complained that during this time his plaster walls cracked. Further, the plaintiff testified that the mold spots on the wall and the cracking plaster continued to the time of trial, December 31, 1996, and that the odors still existed, although not as noticeably. It is this latter evidence that is dispositive of this appeal.

The plaintiff contends that his house was diminished in value because of odors, mold spots, and cracking plaster.[1] The defendant maintains that the trial court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict because there was insufficient evidence that the water under the plaintiff's house caused the mold, odors and cracking plaster. It argues that in this case, proof of the causal connection can only be established by expert testimony.

On appeal from a jury trial, we consider the evidence in the light most favorable to the verdict below. *Swope v. Emerson Elec. Mfg. Co.*, 303 S.W.2d 35, 37 (Mo.1957), *cert. denied*, 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192 (1957). If a plaintiff fails to adduce substantial evidence supporting each element of his claim, then the case should not have been submitted to the jury. *Delisi v. St. Luke's Episcopal–Presbyterian Hosp., Inc.*, 701 S.W.2d 170, 173 (Mo.App.1985).

■ Actionable negligence requires proof of a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Mediq PRN Life Support Serv., Inc. v. Abrams*, 899 S.W.2d 101, 107 (Mo. App.1994). The plaintiff is required to present substantial evidence from which a jury could conclude that the damage to the house resulted from the blocked sewer pipe. *See Kircher v. Purina Mills, Inc.*, 775 S.W.2d 115, 117 (Mo. banc 1989).

■ The plaintiff alone provided the testimony that the odors, cracking plaster, and brown mold spots were caused by the sewer blockage, and that he first became aware of the problem sometime between 1991 and 1993. The operative facts supporting the causal connection are that the onset of the damage was in close proximity to the negligent act and that the sewer water standing under the house caused molds and created unpleasant odors. However, in December 1993 the crawl space was cleaned out and disinfected, resolving the apparent cause of the problem. There was no other evidence supporting the connection between the defendant's negligence and the damages after the sewer line was repaired and the crawl space cleaned out. We are left without any evidence connecting the damages that continued past the clean-up and repairs in December 1993.

■ Proof of a fact, which is essential to submitting an action, may not rest on speculation or conjecture, *W & S Investment Co., Inc. v. Mushrush*, 669 S.W.2d 601, 604 (Mo. App.1984), and without minimum proof that "but for" the sewer line blockage, the odors and mold would not have occurred, the jury was left to speculate as to the cause of the damages. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993). Proximate cause requires at a minimum that the defendant's negligence was the cause of the plaintiff's damages. *Id.* at 862. However, proximate cause also requires that the plaintiff's damages are a "reasonable and probable consequence" of the defendant's negligence. *Id.* at 865.

■ The plaintiff's evidence must support the proposition that the damages that continued from the date of the cleanup for over two years to the date of the trial, were the reasonable and probable consequence of the sewer line blockage. There was substantial and uncontradicted evidence that the cause of the problem was resolved in December 1993, when the crawl space was pumped out

1. The damage instruction, upon which the case was submitted, instructed the jury on the difference between the fair market value of the property before it was damaged and its fair market value after it was damaged. He testified that just before the discovery of the sewer blockage the house was worth $73,000 and that at the time of trial it had a zero value.

and disinfected.[2] The sufficiency of the plaintiff's evidence to support the causal connection between the sewer blockage and damage existing to the time of the cleanup is questionable. However, there was no evidence linkage between the injuries and the damages occurring after the cleanup, and thus there was no basis for submission of any of those damages to the jury. Because there was no evidence, let alone competent and substantial evidence, the jury was left to speculate as to the cause of the problems that continued for over two years after the sewer line had been repaired. The plaintiff's evidence was lacking in that the plaintiff failed to present sufficient evidence linking the problems in his house after the repairs to the sewer blockage.[3]

In the defendant's second point, it argues that the trial court erred in denying its motion for directed verdict and motion for judgment notwithstanding the verdict because there was not sufficient evidence to support the jury instruction regarding apparent agency between the defendant and its independent contractor.

■ To establish apparent agency, the plaintiff must show that: (1) the principal manifested consent to the exercise of authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually did believe, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal. *Link v. Kroenke*, 909 S.W.2d 740, 745 (Mo.App.1995). Apparent agency cannot be created by the acts of the supposed agent alone. *Ottawa Charter Bus Service, Inc. v. Mollet*, 790 S.W.2d 480, 483–84 (Mo.App. 1990). The principal itself must have created the appearance of authority in order to be held liable. *Id.*

■ The plaintiff called the defendant to have his new fence installed. He contracted directly with the defendant for the installation. The defendant then contracted with an independent contractor, who subsequently installed the plaintiff's fence. The plaintiff paid the defendant, and the defendant's personnel removed the old fence. Apparent agency must be based on facts which exist at the time of the transaction and may not be based on facts which arise later. *Eyberg v. Shah*, 773 S.W.2d 887, 891 (Mo.App.1989). The plaintiff met the test for an apparent agency instruction to be given to the jury. He contacted the defendant, contracted with it to have his new fence installed, and paid the defendant for the work done. The trial court's issuance of an agency instruction was appropriate in this situation. Point denied.

The judgment of the trial court is reversed and the case is remanded for retrial consistent with this opinion.

ELLIS and LAURA DENVIR STITH, JJ., concur.

---

2. While our decision here is based on the lack of evidence supporting the damages that continued after the clean up, we would expect that on retrial the plaintiff would not leave to chance the casual connection of the negligent act to the damages that he found between 1991 and the time of the clean up and repairs. Further, the parties would be advised that the measure of damages to real property is the decrease in value or the cost of restoration, whichever is less. *Hinkle v. Emmons*, 826 S.W.2d 359 (Mo.App. 1992).

3. The absence of connecting evidence is complicated by other plausible explanations for the problems in the house. There was evidence that during and before 1992 the odors may have been caused by plaintiff's Great Dane and several other dogs, including an incontinent dog who occasionally was at the plaintiff's house. The plaintiff would care for several dogs, approximately every six weeks. Usually, he never took care of more than two animals at a time, but there were times when he had three dogs under his care. The plaintiff also believed that the dampness from the 1993 flood could have caused his house to smell "funky." The plaintiff also initially attributed the cracking plaster to the fact that he had, during this time, had the wall replastered.