**EUCLID PLAZA ASSOCIATES, L.L.C.**
Plaintiff/Respondent,

v.

**AFRICAN AMERICAN LAW FIRM,**
**L.L.C. and The Institute, L.L.C.**
Defendants/Appellants.

No. ED 78483.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 18, 2001.

Benjamin E. Williams, Kenneth D. Goins, St. Louis, MO, for appellant.

Ryan S. Shaughnessy, St. Louis, MO, for respondents.

MARY R. RUSSELL, Judge.

African American Law Firm, L.L.C. and The Institute, L.L.C. (collectively referred to as "Tenants") appeal from a judgment entered against them for rent and possession in favor of Euclid Plaza Associates, L.L.C. ("Purchaser"). The novel issue in this case is the validity of a lease entered into after a tax sale but before court confirmation of that sale. We find no error and affirm.

Del–Mar Development Corporation ("Prior Owner") failed to pay real property taxes on an office building it owned and the Collector of Revenue for the City of St. Louis conducted a tax sale on July 14, 1998, pursuant to the Municipal Land Reutilization Law ("MLRL"), sections 92.700 to 92.920 RSMo 2000.[1] Two weeks later,

1. All further statutory references are to RSMo 2000.

on August 1, *Prior Owner and Tenants* entered into a three-year lease to begin immediately. Thereafter, on September 10, the circuit court confirmed the tax sale, as required by section 92.840. During the interim between the sale and its confirmation, Prior Owner continued to collect rents. Purchaser subsequently notified all tenants, through a letter dated October 17, 1998, to direct future rent payments to its management company.

Tenants contend the trial court erred in that, despite its findings of fact and conclusions of law, they produced evidence to establish that (1) an agency relationship existed between Purchaser and Prior Owner; (2) the higher rental rate charged by Purchaser was not justified because a factual dispute existed as to whether Tenants were renting under a lease with Prior Owner that was executed after the tax sale, but before its confirmation, or whether they were operating on a month-to-month tenancy with Purchaser, and (3) the lease with Prior Owner was not a prior lease, but was executed subsequent to the sale, making its terms binding on Purchaser.

We will uphold the decision of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In considering challenges to the sufficiency of the evidence, we accept as true all inferences and evidence in the light most favorable to the judgment, and we reject all contrary inferences and evidence. *In re Fabius River Drainage Dist.*, 35 S.W.3d 473, 480 (Mo.App.2000). In a court-tried case, the judge has the sole responsibility of determining the credibility of witnesses and whether the court will accept or reject the testimony, in part or in whole. *Id.*

We initially address Tenants' third point as it presents a question of first impression. Tenants contend that the trial court erroneously decided to void the lease entered into on August 1 because the leasehold had been extinguished by the tax sale.

To determine the parties' rights in the premises after a tax sale, we must look to the statutes. 72 Am.Jur.2d *State and Local Taxation* section 954. The MLRL governs the sale. Section 92.825.2 states, in pertinent part, that:

> Such sale shall convey the whole interest of every person having or claiming any right, title or interest in or lien upon such real estate . . . subject to rights-of-way thereon of public utilities . . . and subject only to the tax lien thereon, if any, of the United States of America.

Section 92.835.2 states, in pertinent part, that:

> The title to any real estate which shall vest in any purchaser, upon confirmation of such sale by the court, shall be an absolute estate in fee simple, subject to rights-of-way thereon of public utilities on which tax has been otherwise paid, and subject to any tax lien thereon of the United States of America, if any, and all persons . . . who may have had any right, title, interest, claim, or equity of redemption in or to, or lien upon, such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, and the court shall order immediate possession of such real estate be given to such purchaser.

Section 92.835.2 describes the quantum of title that shall vest in the purchaser upon confirmation of the tax sale by the court. In addition, it indicates that anyone who previously had any interest in the property is barred and foreclosed of what-

ever interest that person possessed before the confirmation. Section 92.835.2

■ Neither the statute nor relevant precedent clarifies the ownership status, if any, of a tax sale purchaser and a prior owner during the time period after the sale, but before its confirmation. Secondary authority indicates that when a tax deed creates a new and paramount title, "its effect is to extinguish an existing lease given by the former owner." 72 AM.JUR.2D *State and Local Taxation* section 954. Therefore, any validity of the lease executed between Prior Owner and Tenants for the premises sold at the tax sale was extinguished after the confirmation. *See* id.

■ Further support for finding the lease to be extinguished can be found in the purpose of the MLRL. The MLRL was intended to make it easier for municipalities to sell property when owners were delinquent on taxes in order to convert land that was not producing taxes to land that would generate tax revenue for the city. *Collector of Revenue of City of St. Louis v. Parcels of Land Encumbered with Delinquent Tax Liens*, 517 S.W.2d 49, 52 (Mo.1974). It would logically be more difficult to sell the land if it were encumbered with leases or other interests contrary to those of the purchaser. The intent of the legislature to convey title free from all claims except public utilities' rights-of-way and federal tax liens would also be contradicted if such leases were to be honored. *See* section 92.835.2.

We find the trial court was correct in finding that the tax sale and the court confirmation extinguished any leaseholds existing on Purchaser's property. Point denied.

In their first point, Tenants assert that the trial court erred in finding that no evidence was offered by them to establish that Prior Owner was an authorized agent of Purchaser. Tenants claim that Prior Owner acted as an agent based on theories of actual or apparent authority. Specifically, Tenants contend that Prior Owner continued to manage the building and collect rents with the knowledge and permission of Purchaser. This argument is without merit.

■ The creation of an agency relationship requires the presence of three characteristics, and absent any one of them, no claim of agency exists. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993). First, the agent possesses the "power to alter legal relations between the principal and third persons and between the principal and himself." Id. (*quoting* RESTATEMENT (SECOND) OF AGENCY section 12). Second, the agent acts as a fiduciary regarding matters within the scope of the agency. Id. (*quoting* RESTATEMENT (SECOND) OF AGENCY section 13). Third, the principal has the right to control the agent's conduct with regard to matters entrusted to the agent. Id. (*quoting* RESTATEMENT (SECOND) OF AGENCY section 14).

■ The nature of the agency relationship is consensual, and actual authority is created when the principal instructs the agent specifically how to act on the principal's behalf. *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 587 (Mo.App.2000); *United Mo. Bank v. Beard*, 877 S.W.2d 237, 241 (Mo.App.1994).

■ We find no actual authority existed as the evidence failed to establish any of the three elements necessary to create an agency relationship. There was no testimony that Purchaser vested Prior Owner with any of its powers, that Purchaser controlled Prior Owner's actions, or that Prior Owner acted on Purchaser's behalf as a fiduciary or in any other respect. Further, there was no evidence that Purchaser requested Prior Owner to act in

any particular manner. Prior Owner, therefore, had no actual authority to execute the lease with Tenants on Purchaser's behalf.

We also find that Prior Owner did not possess any apparent authority corollary to an agency relationship. Apparent authority is created when the principal acts in such a manner that a third party believes the agent is authorized to act on behalf of the principal. *Graue v. Missouri Property Ins. Placement Facility*, 847 S.W.2d 779, 783 (Mo. banc 1993). Apparent authority develops solely from acts of the alleged principal and not from acts of the purported agent. *Jeff–Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 13 (Mo.1970). In order to claim the existence of apparent authority, the third party must act in reliance upon the belief that the agent possesses authority to act on the principal's behalf. *Beard*, 877 S.W.2d at 240; *Bell*, 454 S.W.2d at 13. Apparent authority cannot arise where a third party does not know the identity of the principal or where the third party is undisclosed. *Beard*, 877 S.W.2d at 240.

There was no evidence that Tenant acted on the belief that Purchaser was the principal party when signing the lease. The lease contained Prior Owner's name and the signatures of two of its representatives, and there was no mention of Purchaser's name. Furthermore, Tenants' testimony indicates that they had no knowledge of Purchaser's acquisition at the tax sale when they entered the lease with Prior Owner. We find the trial court was correct in finding that an agency relationship did not exist. Point denied.

In their second point, Tenants assert that the trial court erred in finding that a month-to-month tenancy existed between Tenants and Purchaser at the rate of $2,033.33 per month. Their argument is based on two contentions: (1) that the

lease with Prior Owner was not a preexisting lease, but was executed subsequent to the sale, making its terms binding on Purchaser; and (2) that Tenants agreed only to continue discussing the validity of the existing lease at a later date, not to the terms of a new lease. Tenants' first contention, that the lease with Prior Owner was binding on Purchaser, has been disposed of in our analysis of point three, as we have concluded that the lease between Prior Owner and Tenants was invalid after the confirmation. *See* 72 Am.Jur.2d *State and Local Taxation* section 954; *see also* section 92.835.2.

We next address Tenants' second contention, that they did not agree with Purchaser as to a new lease amount, but they instead agreed to continue discussing the validity of the lease at a later date. Tenants and Purchaser began negotiations after Purchaser took possession of the building following the sale confirmation. The parties eventually reached an oral agreement that $1,500 rent per month would be paid until August 1999, when negotiations for a new lease would ensue. The parties could not reach an agreement and Purchaser increased the monthly rent to $2,033.33 per month effective November 1, 1999. Tenants refused to pay this amount, asserting that the lease entered into with Prior Owner was still valid and controlling. Tenants continued to pay the $1,500 rent, and Purchaser decided to begin the eviction process. When Tenants refused to return possession, Purchaser filed suit to seek possession and to collect rent past due.

When tenants hold over with consent from the landlord, their possession may ripen into a form of tenancy at will, usually on a month-to-month basis. *Kiefer v. First Capitol Sports Ctr., Inc.*, 684 S.W.2d 483, 486 (Mo.App.1984). During

the time between the lease's execution and the confirmation, Tenants occupied the premises through a tenancy at will on a month-to-month basis, and thereafter they began negotiations seeking a longer lease term. *Id.*; *see* section 441.060.3.

We find the trial court was not in error in finding that Purchaser and Tenants entered into a tenancy at will on a month-to-month basis. Therefore, the trial court correctly ordered Tenants to pay the rent deficiency and to return possession of the premises to Purchaser. Tenants' point is denied.

The judgment of the trial court is affirmed.

GEORGE W. DRAPER III, P.J. and MARY K. HOFF, J., concur.