**CHESTER BROSS CONSTRUCTION COMPANY and C.B. Equipment, Inc., Appellants,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.**

**No. WD 60646.**

Missouri Court of Appeals, Western District.

Sept. 17, 2002.

John Wheelan Maupin, St. Louis, for appellant.

Richard L. Tiemeyer, Michael C. Rose, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

When the Missouri Highway and Transportation Commission refused to pay Chester Bross Construction Company and C.B. Equipment, Inc.,[1] for pavement edge treatment that Bross constructed on a highway project, Bross sued the commission for breach of contract. The circuit court granted summary judgment for the commission, and Bross appeals. We affirm the circuit court's summary judgment.

On March 10, 1995, the commission contracted with Bross to make improvements on U.S. 65 in Benton County. The contract required Bross to construct, if needed, a temporary barricade or gravel slope on exposed pavement edges during the construction to prevent vehicles' tires from dropping off of the pavement's exposed

---

**1.** Chester Bross Construction Company and C.B. Equipment, Inc., joined together in a joint venture for the project that is the subject of this lawsuit. For convenience, we refer to them collectively as "Bross."

edge. According to the commission's standard specifications, incorporated into the contract, Bross could choose between two types of pavement edge treatment: temporary concrete traffic barriers or a "wedge slope" constructed of an "aggregate base material." Bross chose aggregate wedge slopes.

The contract required Bross to construct wedge slopes of differing grades, depending on the size of the pavement drop-off. In its itemized proposal for bids, the commission indicated the linear footage of pavement edge treatment needed was 25,951, about one-half of the length of repaving on one side of the road. Bross bid $4 a linear foot for the pavement edge treatment.

Bross constructed a wedge slope pavement edge along the length of the project except for side roads and driveway entrances. Bross later removed and disposed of those wedge slopes so that it could grade out a shoulder for the new pavement. Bross then constructed another wedge slope because of the larger drop-off from the pavement to shoulder base. Bross constructed a total of 194,210 linear feet of pavement edge treatment.

After Bross completed the pavement edge treatment, the commission increased the contract's quantity of pavement edge treatment to 100,273 linear feet by a change order. The change order indicated that the reason for the increase: "Pvmt edge treatment overran 74,332 lin. ft. because it required end to end and rt and lt of pavement after shoulder excavation. Plan quantity was ½ length of project[.]"[2] Mike Bross, Bross' vice president, agreed to the change order.

The contract provided, at Special Provision § 619.4.1, "Measurement of edge treatment will be made to the nearest linear foot for the units actually constructed." However, the commission's standard specifications for the project provided these payment terms for the pavement edge treatment:

> The accepted quantity of edge treatment will be paid for at the contract unit bid price for the units constructed or the units shown in the contract, whichever is greater. Payment shall include all materials and labor necessary to eliminate the need for [edge treatment] or [to] construct, maintain, replace, relocate, remove and dispose of edge treatment.

Standard Specification § 619.5.1.

Bross received the commission's third and final change order, and Mike Bross signed it on May 14, 1996. Ten days later, on May 24, Chester Bross, Bross' president, informed the commission by letter that all the edge treatment that Bross had constructed was not included in the final quantities.

Bross later filed a $375,748 claim against the commission for the remaining 93,937 linear feet of pavement edge treatment that it constructed but for which it had not been paid. The commission denied the claim. The commission decided that the 93,937 linear feet of edge treatment was "reconstruction or actually replacement of edge treatment previously constructed, paid for, removed and then replaced as a result of the construction methods which [Bross] chose to employ." The commission, therefore, concluded that it did not owe Bross additional compensation for the 93,937 linear feet of edge treatment under § 619.5.1.

Bross sued the commission for breach of contract. Both parties filed motions for summary judgment, and the circuit court

---

2. The original was in all capital letters.

granted summary judgment for the commission. Bross appeals.

Our review of the circuit court's summary judgment is essentially *de novo*. *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the evidence in the record in the light most favorable to the party against whom the circuit court ruled. We endeavor to do this by accepting only inferences in the evidence that favor the party against whom the circuit court ruled. *Id.* We will not set aside the circuit court's order of summary judgment if it is supportable on any theory. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995). "The theory need not be one raised or argued by either party and may be raised *sua sponte* by the appellate court, provided the court incorporates principles raised in the petitions." *Id.*

Before a circuit court can enter summary judgment, it must determine that the parties are not disputing any genuine issues of material fact and that the party seeking summary judgment is entitled to a judgment as a matter of law. *ITT*, 854 S.W.2d at 377; Rule 74.04(c)(3). A defending party to a lawsuit who moves for summary judgment need not controvert each element of the plaintiffs' claim to establish a right to summary judgment:

[A] "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts [sic], (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support

the movant's properly-pleaded affirmative defense.

*ITT*, 854 S.W.2d at 381 (emphasis in the original). When a defending party makes a *prima facie* showing that the parties are not disputing any genuine issues of material fact and that he is entitled to judgment as a matter of law, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e).

 The commission asserts that the circuit court's summary judgment was proper because Bross could not produce sufficient evidence to allow a trier of fact to find the existence of any of the elements of Bross' breach of contract claim. "Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face." *Lupo v. Shelter Mutual Insurance Company*, 70 S.W.3d 16, 18 (Mo.App.2002); *J.H. Berra Construction Company, Inc. v. Missouri Highway and Transportation Commission*, 14 S.W.3d 276, 279 (Mo.App. 2000). Determination of whether or not a contract is ambiguous is a matter of law. *Maryland Casualty Company v. Martinez*, 812 S.W.2d 876, 880 (Mo.App.1991).

 The parties do not dispute any material issue of fact. They quarrel over the proper interpretation of the contract's provisions to the undisputed facts, but, in the context of an unambiguous contract, the circuit court was correct to apply, as a matter of law, the contract's language to the underlying facts. Bross appeals on the basis that the circuit court's application of the contract's unambiguous provisions was incorrect. We disagree and affirm the circuit court's judgment.

Bross focuses on Special Provision § 619.4.1, which said, "Measurement of

edge treatment will be made to the nearest linear foot for the units actually constructed." Bross believes that "actually constructed" means that it should receive $4 for every linear foot of edge treatment that it actually laid down, even when it removed the first edge treatment so it could grade the shoulder and then re-laid an edge treatment for the new exposed drop-off created by the new construction.

The commission does not dispute Bross' contention that it constructed 194,210 linear feet of edge treatment. The parties also do not dispute that the commission paid Bross for 100,273 linear feet of pavement edge treatment and that the balance of 93,937 linear feet represents areas where Bross constructed pavement edge treatment more than once.

The circuit court ruled that Standard Specification § 619.5.1 precluded payment for the additional 93,937 linear feet because the commission's initial payment for pavement edge treatment included replacement or relocation of the edge treatment. We agree.

Standard Specification § 619.5.1 said, "Payment shall include all materials and labor necessary to eliminate the need for [edge treatment] or [to] construct, maintain, replace, relocate, remove and dispose of edge treatment." In construing this provision, we ascribe the plain and ordinary meaning of its words as derived from the dictionary. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999). The ordinary meaning of "replace" is:

> 1: to place again: restore to a former place, position, or condition . . . 2: to take the place of: serve as a substitute for or successor of: SUCCEED, SUPPLANT . . . 3: to put in place of: provide a substitute or successor for . . . 4: to fill the place of: to supply an equivalent for[.]

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1925 (1971). The ordinary meaning of "relocate" is "to locate or allocate again: establish or lay out in a new place[.]" *Id.* at 1919.

Bross contends that, because the first edge treatment that it constructed had a steeper slope than the second, the second construction was not a "replacement." Bross asserts that the second edge treatment "did not function as [the first slope] and did not take the position of the former edge treatment because it was in a drop-off greater than four inches." It also contends that the second construction was not a "relocation" because "it was not simply the initial edge treatment moved to a new location—it used a different material and a different quantity of material."

The slopes' steepness and the type or quantity of material used did not make any difference. The payment provision specifically said that payment was for "all materials and labor" necessary to replace or to relocate the edge treatment. Regardless of the slopes' steepness or whether Bross constructed them with different or more material, it still was an edge treatment that Bross replaced or relocated because of its construction practices. When Bross constructed the additional 93,937 linear feet, it was replacing the edge treatment by "placing it again" or by "putting it in place of" the previous edge treatment. It also was relocating the edge treatment by "laying it out in a new location."

As required by Standard Specification § 619.5.1, the $4 per linear foot payment for edge treatment actually constructed included the edge treatment's initial construction and its later removal, replacement, or relocation. Bross' claim for constructing the additional 93,937 linear feet was for edge treatment that it replaced or relocated. Bross agreed that $4 per linear foot was full compensation for providing

the material and labor to "construct, maintain, replace, relocate, remove and dispose of edge treatment." The commission's payment for 100,273 linear feet of edge treatment, therefore, included payment for Bross' replacing or relocating the edge treatment.

The circuit court properly granted summary judgment for the commission. We affirm the circuit court's judgment.[3]

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.

---

**3.** Because we reach this conclusion, we need not address Bross' remaining contentions that the circuit court erred in granting the commission's motion for summary judgment for the reasons that Bross' execution of the second change order constituted a waiver of its rights to claim additional compensation and because the commission's engineer was afforded discretion in interpreting Standard Specification § 619.5.1.