**Sharon GAUERT, as the Assignee in interest of Phillip and Phyllis Collins, Appellant,**

v.

**CHRIS–LEEF GENERAL AGENCY, INC., Respondent.**

**No. WD 61664.**

Missouri Court of Appeals, Western District.

Nov. 4, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied Jan. 27, 2004.

Allan H. Bell, Kansas City, MO, for appellant.

Spencer J. Brown, Kansas City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Sharon Gauert appeals the trial court's grant of summary judgment in favor of Chris–Leef General Agency, Inc. on her claim of negligence in the procurement of general liability insurance. The judgment of the trial court is affirmed.

On March 31, 1992, Kansas City Oil Company (KCO) operated a gasoline station on Swope Parkway in Kansas City. At that time, Phil Collins owned all of the stock of KCO. Mr. Collins and his wife, Phyllis, owned the real estate on which the gasoline station was located. Tim Gauert was employed by KCO as an attendant at the gasoline station. On that day, while working for KCO, Mr. Gauert was shot to death in the course of a robbery at the gasoline station.

Sharon Gauert, Mr. Gauert's widow, filed a wrongful death action against the Collinses alleging that their negligence as landowners caused her husband's death. The parties entered into an agreement pursuant to section 537.065, RSMo 2000, wherein the Collins agreed to allow judgment to be taken against them in an amount to be determined by the trial court with recovery from them limited to their insurance coverage. The trial court approved the settlement of the parties, entered judgment against the Collinses, and awarded Mrs. Gauert damages in the amount of $2,400,867.22.

Thereafter, Mrs. Gauert, in her capacity as assignee of the Collinses, sued Chris–Leef alleging that the insurance agency, as the agent of KCO, negligently failed to have the Collinses named as additional insureds on the KCO commercial liability policy. Chris–Leef subsequently filed a motion for summary judgment. It argued that the facts were not in dispute and that it was entitled to judgment as a matter of law for four separate reasons. First, it contended that neither Sharon Javinsky nor her employer, Encore Insurance Agency, Inc., the insurance agent with whom the Collinses dealt, was the agent of Chris–Leef. Second, Chris–Leef argued that even if the Collinses had been named insureds on the policy, the assault and battery exclusion in the policy would have precluded coverage for the death of Tim Gauert. Third, it argued that because the claim of Mrs. Gauert against the Collinses was within the exclusive jurisdiction of the Labor and Industrial Relations Commission, the judgment entered in the case was void and, thus, did not injure the Collinses. Finally, Chris–Leef contended that the assignment to Mrs. Gauert of the Collinses' unliquidated claim against Chris–Leef was void. The trial court granted summary judgment in favor of Chris–Leef. This appeal by Mrs. Gauert followed.

**Standard of Review**

Appellate review of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is upheld on appeal where the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a par-

ty's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* The material facts in this case are not in dispute. The issue on this appeal, therefore, is whether Chris–Leef established a right to judgment as a matter of law on Ms. Gauert's claim against it.

### Agency

 In her first point on appeal, Mrs. Gauert claims that the trial court erred in granting summary judgment in favor of Chris–Leef on her claim for negligence in the procurement of insurance. In a negligence action, the plaintiff must establish that the defendant had a duty to the plaintiff, that the defendant failed to perform that duty, and that the defendant's breach was the proximate cause of the plaintiff's

injury. *Hecker v. Mo. Prop. Ins. Placement Facility,* 891 S.W.2d 813, 816 (Mo. banc 1995). An insurance broker or agent who undertakes to procure insurance for a party, with a view to earning a commission, becomes the party's agent and, in part, owes a duty to timely notify that party if it fails to procure such insurance. *Id.* If the broker or agent unjustifiably and through its fault or neglect fails to procure such insurance, it will be held liable for any damage resulting therefrom. *Zeff Distrib. Co. v. Aetna Cas. & Sur. Co.,* 389 S.W.2d 789, 795 (Mo.1965) (citation omitted).

The following material facts are undisputed. In February 1992, Phil Collins sought a commercial liability insurance policy on behalf of KCO. Mr. Collins contacted Sharon Javinsky, the sole shareholder of Encore Insurance Agency, to purchase such insurance. During their dealing, Mr. Collins did not know for what company Ms. Javinsky worked and assumed she ran her own business as an insurance broker dealing with a number of insurance companies. After talking with Mr. Collins, Ms. Javinsky completed KCO's application for insurance dated February 7, 1992, and submitted it to eight or nine potential wholesale suppliers including Chris–Leef. Chris–Leef is a managing general agency that provides underwriting services for a number of insurance companies. It does not sell insurance. An underwriter at Chris–Leef received the KCO application on February 14, 1992. Based on several factors in the application, the application fell outside Chris–Leef's underwriting authority; therefore, Chris–Leef referred the application directly to the insurance company, Colony, on February 25, 1992. It received authorization from Colony the same day to provide a quotation.

Ms. Javinsky received nine quotes on the KCO applications that she submitted to various wholesalers. Because Colony offered the best coverage and quote, KCO selected its offer. Based on Ms. Javinsky's request on February 27, 1992, Chris–Leef issued a binder for the coverage on February 29, 1992. It also ordered inspections of the KCO properties on behalf of Colony. Because KCO could not afford to pay the premium on the Colony policy, KCO asked Ms. Javinsky to help it obtain premium financing, which she did. Chris–Leef did not receive any financial benefit from the financing company or participate in financing the premium other than confirming for the finance company that KCO had procured the coverage represented in the application for premium financing.

The Colony policy was typed on April 7, 1992. Chris–Leef provided Colony with a copy of the policy, the signed application, the binder, the worksheet, and the inspection report. The inception date of the Colony policy was February 27, 1992. Chris–Leef was identified on the policy as the Producer. The Collinses were not named on KCO's commercial liability policy as additional insureds.

Mrs. Gauert's claim against Chris–Leef for negligence in the procurement of insurance was based on the allegation that Chris–Leef was the Collinses' insurance agent directly or through its agent, Ms. Javinsky, and that Chris–Leef failed to have the Collinses named as additional insureds on the policy as directed.

A principal is responsible for the acts and agreements of its agent that are within the agents actual or apparent authority. *Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 661 (Mo.App. E.D.1993). "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY 7 (1957)). Actual authority is express or implied. *Id.* Actual authority is created when a principal instructs the agent specifically how to act on the principal's behalf. *Euclid Plaza Assocs., L.L.C. v. African Am. Law Firm, L.L.C.*, 55 S.W.3d 446, 449 (Mo.App. E.D.2001). Implied authority consists of those powers incidental and necessary to carry out express authority. *Nichols*, 851 S.W.2d at 661.

Apparent authority, on the other hand, is created when a principal acts in such a manner that a third party believes the agent is authorized to act on behalf of the principal. *Graue v. Mo. Prop. Ins. Placement Facility*, 847 S.W.2d 779, 783 (Mo. banc 1993); *Euclid Plaza Assocs.*, 55 S.W.3d at 450. Apparent authority develops solely from the acts of the alleged principal and not from the acts of the purported agent. *Euclid Plaza Assocs.*, 55 S.W.3d at 450. It must be based on facts that exist at the time of the transaction and may not be based on facts that arise later. *Gray v. Builders Square, Inc.*, 943 S.W.2d 858, 861 (Mo.App. W.D.1997). Apparent authority cannot arise where a third party does not know the identity of the principal or where the third party is undisclosed. *Euclid Plaza Assocs.*, 55 S.W.3d at 450.

The undisputed evidence shows that Chris–Leef was not the Collinses' insurance agent. The Collinses never had contact with Chris–Leef. Mr. Collins testified in his deposition that he only dealt with Ms. Javinsky of Encore in obtaining commercial liability insurance for KCO. He further testified that he did not become aware of Chris–Leef until he saw its name on the Colony policy in his attorney's office after litigation resulting from Tim Gauert's

death began.[1] Mrs. Gauert argues that because Chris–Leef issued the binder for insurance coverage, was named on the insurance policy as the producer, arranged for inspection of the property, and confirmed for the finance company that KCO had procured the coverage represented in the application for premium financing, it was acting as the insurance agent of KCO and the Collinses. These actions, however, were done for the benefit of the insurance company, Colony, for which Chris–Leef underwrites policies.

Neither was Ms. Javinsky or her company, Encore, the agent of Chris–Leef either through actual or apparent authority. The undisputed evidence shows that as a managing general agency, Chris–Leef is a wholesale insurance supplier that underwrites insurance for a number of insurance companies. It does not have direct contact with insureds but instead receives business from approximately 350 insurance agencies, which it refers to as its Agency Force, such as Encore in this case. While Chris–Leef and Encore do have a business arrangement, the arrangement is not one of principal and agent. The relationship between Encore and Chris–Leef is one where Encore brings the customer and Chris–Leef brings the insurance policy. Chris–Leef does not provide any incentive to Encore for business referred to it and has no financial interest in Encore. It does not instruct Encore how to operate nor does it demand a certain sales volume from Encore. Additionally, Chris–Leef did nothing to cause the Collinses to be-

lieve that Encore had the authority to act for Chris–Leef. As stated above, the Collinses did not even know the identity of Chris–Leef until after they purchased the Colony insurance policy. The trial court, therefore, did not err in granting summary judgment in favor of Chris–Leef.[2] The point is denied.

The judgment of the trial court is affirmed.

SMART, P.J. and HARDWICK, J. concur.

---

1. Mrs. Gauert claims that whether Mr. Collins assumed or believed that Ms. Javinsky worked for Chris–Leef was disputed. In making this claim, she cites to specific answers in Mr. Collins' deposition. Review of the deposition, however, shows that after further questioning, Mr. Collins ultimately acknowledged that he did not know who Ms. Javinsky worked for at the time he purchased the insurance and only learned of Chris–Leef when he saw its name

on the policy in his attorney's office after litigation began.

2. Because this point disposes of the case, Mrs. Gauert's remaining points regarding the trial court's grant of summary judgment for other reasons need not be addressed. *Chester Bross Constr. Co. v. Mo. Highway & Transp. Comm'n,* 84 S.W.3d 149, 150 n. 3 (Mo.App. W.D.2002).