## United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1443
_____

GP3 II, LLC

*Plaintiff - Appellee*

v.

Litong Capital, LLC

*Defendant - Appellant*

Bank of the West

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: January 12, 2022
Filed: June 3, 2022

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

The district court[1] denied Litong Capital, LLC's ("Litong") motion to compel arbitration, holding the person who purportedly signed the arbitration agreement on behalf of GP3 II, LLC ("GP3") did not have authority to do so. We affirm.

## I. Background

The factual background of this lawsuit is complicated and at times puzzling. However, this appeal is about a single contract and whether a man named Ron Green had authority to sign it on behalf of GP3. Thus, we limit this background to the facts relevant to this appeal.[2]

GP3 was created by a general contractor as an investment vehicle for a water pipeline project in New Mexico (the "Project"). Litong became involved with the Project by way of this story's mysterious middleman, Steve Lin. Litong claims Lin contacted its president, Xinhua "Alice" Song, requesting Litong procure pipe for the Project. Song never met Lin but believed Lin was GP3's broker. Around the same time, Lin began dealing with Michael Heitmann, GP3's sole member and manager, who testified he believed Lin was an agent of Litong. Heitmann testified he believed Litong was added to the Project to obtain additional financing for the Project. Lin has become unavailable to the parties.

According to Litong, Lin brokered a sales agreement between Litong and GP3 (the "Contract"). Under the Contract, GP3 would pay Litong $19,978,350 to procure specified pipe for the Project. The Contract also included an arbitration provision, which in part specified:

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

[2]For a thorough background of this lawsuit and the events leading thereto, see the district court's order denying Litong's motion to compel. *GP3 II, LLC v. Bank of the West*, No. 20-424, 2021 WL 5514005, at *1–3 (W.D. Mo. Jan. 28, 2021) (unpublished).

In case no settlement can be reached, the case may then be submitted for arbitration to the Arbitration committee of the Court of Beijing[,] China. The arbitration shall take place in Beijing[,] China and shall be final and binding on both parties; neither party shall seek recourse to a law court or other authorities for revision of the decision.

The formation of the Contract is at the center of this appeal. Song signed the Contract on behalf of Litong. In the "Buyer" signature block, the name "Ron Green" is signed with Green labeled "Partner" of GP3. Green, who denies he signed the Contract, was the president and manager of New Mexico Regional Water, LLC, the Project's developer (the "Developer"). Green testified he was neither a member, partner, nor employee of GP3. Green also testified that no person at GP3 ever told him he could sign the Contract, and he did not believe he had such authority. GP3 claims it was not aware of the Contract until after it filed this lawsuit. Song testified she believed Green had authority to sign the Contract because Lin told her Green was a partner of GP3 with signing authority.

The Project eventually fell through, and GP3 sued Litong, along with Bank of the West, to whom Litong assigned its rights to payment due under the Contract, seeking injunctive and declaratory relief against both parties and alleging fraud against Litong. Bank of the West filed an answer which included counterclaims against GP3 for breach of contract, fraud, and negligent misrepresentation and crossclaims against Litong for breach of contract and fraud. Litong moved to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration Act (the "FAA"), arguing GP3's and Bank of the West's claims were subject to the arbitration provision in the Contract. The district court denied Litong's motion to compel arbitration, holding that even assuming Green signed the Contract, he did not have authority to sign it on behalf of GP3. The district court concluded that because the relied-on arbitration provision is not part of a valid agreement between the parties, neither GP3's nor Bank of the West's claims are subject to the provision.

Litong appeals the district court's denial of its motion to compel arbitration, claiming the district court erred by holding Green lacked authority to enter the

-3-

Contract on behalf of GP3.  Litong also asks this court to compel arbitration of Bank of the West's claims—even though Bank of the West was not a party to the Contract—under the principles of incorporation by reference and estoppel.

## II.  Analysis

We review the district court's denial of a motion to compel arbitration under § 4 of the FAA de novo, though we review the district court's findings of fact underpinning its arbitrability ruling for clear error.  *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021).  Under the FAA, "[a] motion to compel arbitration must be granted 'if a valid arbitration clause exists which encompasses the dispute between the parties.'"  *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156–57 (8th Cir. 2012) (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008)).

### A.  Arbitrability of Green's Authority

Before deciding whether Green had authority to sign the Contract for GP3, we address Litong's argument that the issue of Green's authority is an issue for arbitration.  Litong relies on Supreme Court precedent holding questions over the validity of a contract containing an arbitration provision are for the arbitrator in the first instance.  *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–46 (2006).  In *Buckeye*, the Supreme Court distinguished between two kinds of claims challenging the validity of arbitration agreements.  One kind of claim challenges the validity of the arbitration provision itself, and a federal court may adjudicate these challenges.  *See id.*  The other type of claim challenges the validity of the contract as a whole, and these challenges are for the arbitrator.  *See id.*

The Court in *Buckeye*, however, stated that issues of contract formation—specifically, issues related to the authority of a signor—do not necessarily fall in the "validity of the contract as a whole" bucket of claims:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today . . . does not speak to the issue . . . [of] whether the signor lacked authority to commit the alleged principal . . . .

*Id.* at 444 n.1. The Court later affirmed "that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Because a signor's authority to bind a purported principal is an issue of contract formation, *see Buckeye*, 546 U.S. at 444 n.1, the issue of Green's authority to bind GP3 was within the district court's province to decide.

## B. Green's Apparent Authority

We next address whether Green had authority to enter the Contract on behalf of GP3. Litong concedes Green had no actual authority. Rather, Litong asserts Green had apparent authority to enter the Contract on behalf of GP3.[3]

The parties agree Missouri law governs this dispute. *See Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001) ("State contract law governs whether an arbitration agreement is valid."). In Missouri, the party arguing the existence of a valid contract to arbitrate—here, Litong—bears the burden of proving the contract was formed. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. Ct. App. 2011); *accord Duncan*, 20 F.4th at 402.

---

[3]In its opening brief, Litong argued GP3's conduct ratified Green's conduct. Ratification, unlike apparent authority, can occur when a principal adopts or confirms a contract that was created without the principal's authority after the contract has been formed. *See Murphy v. Jackson Nat'l Life Ins. Co.*, 83 S.W.3d 663, 668 (Mo. Ct. App. 2002). However, in its reply brief, Litong expressly disclaims it made a ratification argument in this "traditional sense." Instead, it argues it used the word "ratification" to represent GP3's manifested consent of Green's actions under principles of apparent authority. Thus, we limit our review to the issue of apparent authority.

We have summarized that "[u]nder Missouri law, apparent authority is created by the conduct of the principal which causes a third person reasonably to believe that the purported agent has the authority to act for the principal, and to reasonably and in good faith rely on the authority held out by the principal." *Essco Geometric v. Harvard Indus.*, 46 F.3d 718, 726 (8th Cir. 1995) (citations omitted); *accord Starr v. Jackson Cnty. Prosecuting Att'y*, 635 S.W.3d 185, 190 (Mo. Ct. App. 2021). Because apparent authority is about the manifest intent of the principal, it "does not arise from the acts of the agent." *Essco Geometric*, 46 F.3d at 726; *accord Gauert v. Chris-Leef Gen. Agency, Inc.*, 123 S.W.3d 270, 273 (Mo. Ct. App. 2003). To create apparent authority by acquiescence of the principal, the principal must know of and acquiesce to the acts of the agent. *See Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 848 (Mo. Ct. App. 1986). Also, apparent authority "must be based on facts that exist at the time of the transaction and may not be based on facts that arise later." *Gauert*, 123 S.W.3d at 273.

The district court held Litong failed to carry its burden of showing Green had apparent authority to sign the Contract for GP3 because Litong relied solely on conduct that either (1) was not GP3's conduct or (2) did not occur until after the Contract was signed. The district court did not clearly err in making these factual findings, and we agree such findings thwart Litong's argument that Green had apparent authority.

Litong argues Green had apparent authority to enter the Contract for GP3 based on evidence that Green acted as though he represented GP3 on multiple occasions. Litong presented evidence that Green held himself out as a GP3 partner by using GP3's letterhead, drafting and signing documents labeling him a partner, signing a "Water Project Agreement" as a "managing member" of "[The Developer]/GP3," mailing GP3 documents directly to Bank of the West, and introducing himself to Bank of the West representatives as a representative of GP3. But these are examples of Green's conduct, not GP3's. Green's conduct is only relevant if GP3 knew of and acquiesced to Green's conduct *before* Green allegedly signed the Contract. *See Hamilton Hauling*, 719 S.W.2d at 848. The district court

-6-

observed Litong failed to show GP3 was aware of Green's representations at the time of the Contract's formation, a conclusion supported by the absence of such evidence in the record. Indeed, each of Green's above representations occurred after Green purportedly signed the Contract.

As to GP3's conduct, Litong notes that GP3 caused a $20 million standby letter of credit to be issued—the method of payment contemplated by the Contract— with Litong as a beneficiary and then amended the letter of credit to ensure Litong could draw on it to cover any failure by GP3 to pay invoices.[4] But these events occurred after the Contract was purportedly formed, rendering them ineffective in establishing apparent authority at that time. *See Gauert*, 123 S.W.3d at 273.

Ultimately, the record demonstrates that when Green purportedly signed the Contract, the only reason Litong believed Green had authority to sign the Contract for GP3 was Lin's representations to Song that Green owned part of GP3 and had signing authority. Lin's representations could not have established Green's apparent authority because apparent authority arises "solely from the acts of the alleged principal." *Gauert,* 123 S.W.3d at 273.

Litong argues its claim is analogous to the claim in *Alexander v. Chandler*, 179 S.W.3d 385 (Mo. Ct. App. 2005), wherein the Missouri Court of Appeals, on review of summary judgment, held a genuine issue of material fact existed about whether a company "consented to" or "knowingly permit[ted]" a salesman's representations that he was the company's agent. *Id.* at 389–90. Litong argues that in *Alexander*, like here, the company did not employ the purported agent and had no direct communications with the relying third party, but the purported agent identified himself as a representative of the company and used equipment, documents, and other items carrying the company's logos.

---

[4]GP3 maintains the purpose of the letter of credit was to satisfy the collateral requirement of the primary lender of the Project and that it included Litong as a beneficiary because it believed Litong needed access to the letter of credit to help obtain capital for the Project.

We are not persuaded. In *Alexander*, the court affirmed the rule that apparent authority is created by conduct of the principal, "not of the agent." *Id.* at 389 (citing *Hamilton Hauling*, 719 S.W.2d at 848). And *Alexander* does not abrogate Missouri's established rule that apparent agency is determined by facts known at the time of the transaction. In *Alexander*, the Missouri Court of Appeals found a dispute of fact as to whether the company knowingly permitted or consented to the purported agent's actions, which precluded summary judgment. *See id.* at 389–90. Here, in deciding a motion to compel arbitration—for which we review factual findings for clear error rather than under the summary judgment standard, *see Duncan*, 20 F.4th at 402—the district court found "no evidence that GP3 or Heitmann knew or approved of Green's representation of himself as a GP3 partner—and certainly no such evidence from the time period when Green allegedly signed the [C]ontract." We find the record here supports the district court's factual findings, and they are therefore not clearly erroneous. *See Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 854 (8th Cir. 2021) (holding the district court did not commit clear error because "sufficient evidence in the record" supported the district court's factual findings). Thus, *Alexander* is inapposite.

For the above reasons, we hold the district court did not err in concluding Green lacked apparent authority to sign the Contract for GP3. Thus, we affirm the district court's denial of Litong's motion to compel arbitration of GP3's claims. Further, Litong's basis for its argument to compel arbitration of Bank of the West's claims is that Bank of the West is bound to the Contract through incorporation or estoppel. Because we affirm the district court's holding that the Contract was never formed, Litong has no basis upon which it can compel arbitration of Bank of the West's claims.

## III. Conclusion

For the reasons stated herein, we affirm the district court's denial of Litong's motion to compel arbitration of both GP3's and Bank of the West's claims.

_____

-8-